# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**
No. 21-2196V
UNPUBLISHED

| | |
|---|---|
| KIM RINELLA,<br><br>    Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND HUMAN SERVICES,<br><br>    Respondent. | Chief Special Master Corcoran<br><br>Filed: December 2, 2022<br><br>Special Processing Unit (SPU); Influenza (Flu); Guillain-Barré Syndrome ("GBS"); Table Claim Dismissal. |

*Edward M. Kraus*, Law Offices of Chicago Kent, Chicago, IL, for Petitioner.

*Lynn Christina Schlie*, U.S. Department of Justice, Washington, DC, for Respondent.

### ORDER DISMISSING TABLE CLAIM[1]

On November 22, 2021, Kim Rinella filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleges that she suffered "an injury set forth on the Vaccine Injury Table," specifically Guillain-Barré syndrome ("GBS") as a result of an influenza ("flu") vaccination she received on October 14, 2019. Petition at 1. The case was assigned to the Special Processing Unit of the Office of Special Masters (the "SPU").

---

[1] Because this unpublished Ruling contains a reasoned explanation for the action in this case, I am required to post it on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). **This means the Ruling will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

On November 21, 2022, Respondent filed a Rule 4(c) Report maintaining that this case is not appropriate for compensation. ECF No. 26. Because I find that the Petitioner's Table claim cannot succeed, I hereby dismiss it – which leaves a possibly-meritorious causation-in-fact claim.

I. **Fact History**

The filed records establish that Petitioner received the flu vaccine on October 14, 2019 at a follow-up appointment with her primary care physician ("PCP") after a right shoulder surgery. Ex. 3 at 46-48. She received a shingles vaccine at the same time. *Id.* at 48. Ten days later, Petitioner returned to her PCP complaining of flu-like symptoms, including sore throat, chills, body aches, and sinus congestion. *Id.* at 42. She followed up on her respiratory symptoms with her PCP again on November 4, 2019, and with an allergist on November 5, 2019. *Id.* at 39-40; Ex. 14 at 19. Petitioner returned to her PCP on November 25, 2019, with continued complaints of cough and congestion, which she claimed was worsening after her exposure to "red tide" in Florida. Ex. 3 at 33.

On November 28, 2019 (45 days after her vaccination), Petitioner presented to the emergency department reporting a metallic taste in her mouth, blurred vision, and numbness and tingling in her arms for the previous five days. Ex. 17 at 6. She also complained of respiratory symptoms and reported her exposure to "red tide." *Id.* She was later discharged. *Id.* at 11. Two days later, Petitioner returned to her PCP with complaints of weakness, numbness in her hands, feet, and mouth, and blurry vision in her left eye. Ex. 3 at 29. She was referred back to the emergency department. *Id.*

At the ER, Petitioner was evaluated by a neurologist, who believed her symptoms were "most consistent with" GBS. Ex. 1 at 62. Petitioner had brain and spine MRIs and a lumbar puncture, the results of which did not change the diagnosis. *Id*. at 39-64. She was admitted and treated for GBS, including seven plasmapheresis treatments, five IVIG treatments, several days of intubation due to facial weakness, and insertion of a feeding tube. *Id.*

Petitioner was discharged from the hospital to inpatient rehabilitation. Ex. 18 at 837. After her stay in inpatient rehab, Petitioner continued to have ongoing symptoms, including dysesthesia, dysphagia, and weakness in her arm and leg. Ex. 1 at 270. She received a second round of IVIG treatment. *Id.* An EMG on February 10, 2020 was abnormal, after which Petitioner began additional IVIG treatment, which continued through the summer of 2020. *Id.* at 23-29; 264.

In approximately October 2020, Petitioner moved to Florida and established care with a new neurologist, Dr. Konstantin Dzamashvili, who diagnosed CIDP and ordered

continuing bimonthly IVIG treatment. Ex. 13 at 13-16. In the summer of 2021, Petitioner returned to Illinois and to her original neurologist, Dr. Andrew Gordon, who ordered a repeat EMG. Ex. 27 at 55. The EMG revealed evidence of a "chronic demyelinating polyneuropathy." *Id*. at 77. On November 30, 2021, Dr. Gordon noted that Petitioner had "atypical CIDP" in presentation, but that her pattern of continuing/worsening symptoms for more than a year "is consistent with CIDP rather than AIDP." *Id*. at 25.

## II.   Discussion

To receive compensation under the Vaccine Program, a petitioner may demonstrate a vaccine injury in one of two ways: (1) by proving that she suffered a vaccine-specific injury listed on the Vaccine Injury Table ("Table") with onset within the time period required by the Table; or (2) by proving that she suffered an injury caused-in-fact by a vaccine listed on the Table. 42 U.S.C. ¶300aa-11(c)(1)(C). For both Table and causation-in-fact claims, petitioners bear a "preponderance of the evidence" burden of proof, which requires evidence that establishes that "the existence of a fact is more probable than its nonexistence." Section 13(1)(A); *Moberly v. Sec'y of Health & Human Servs.*, 592 F.3d 1315, 1321 (Fed. Cir. 2010). Proof of medical certainty is not required. *Bunting v. Sec'y of Health & Human Servs.*, 931 F.2d 867, 873 (Fed. Cir. 1991). A petitioner may not receive a Vaccine Program award based solely on his own assertions; rather, the petition must be supported by either medical records or by the opinion of a competent physician. Section 13(a)(1).

To establish any Table claim, a petitioner must make a factual showing to meet each of the claim's elements, as set forth on the Table's "Qualifications and Aids to Interpretation" ("QAI"). Section 14(b). If successful, the petitioner need not also demonstrate causation, as it is presumed if the Table requirements for a particular claim are met. Section 14(a). To establish a GBS Table injury, a petitioner must prove that the onset of symptoms was no less than three days and no more than forty-two days after vaccine administration. 42 C.F.R. §100.3(a)(XIV)(D). Moreover, a petitioner must also demonstrate that there is no more likely cause for his symptoms. *See* C.F.R. § 100.3(c)(15)(v). An ultimate diagnosis of CIDP is considered an exclusionary criterion for a flu-GBS claim. Section 14(b).

In this case, the onset of Petitioner's GBS symptoms is not a basis for dismissal. Petitioner presented to the emergency room on November 28, 2019 (a Thursday), 45 days after her vaccination, complaining of symptoms (metallic tastes, blurred vision, and numbness and tingling in her arms) since the previous Saturday, five days before. Ex. 17 at 6. In addition, Petitioner stated her in affidavit that she had felt tingling in her feet as early as October 18, 2019 (four days after her vaccination), which continued and

worsened. Ex. 20 at ¶7. This places onset of symptoms at the earliest four days, and at the latest 40 days post-vaccination, thus falling within the acceptable range for a Table GBS claim. 42 C.F.R. §100.3(a)(XIV)(D).

However, the record preponderantly establishes that Petitioner's proper diagnosis was CIDP, rather than GBS (or AIDP). Although Petitioner was initially treated for GBS, she continued to experience symptoms and to receive treatment, including IVIG infusions, for more than two years after her initial presentation. *See* Ex. 28 at 6-18 (continuing IVIG treatments into mid-2022). This is consistent with the fact that GBS is known to be acute and monophasic – rather than chronic and meandering like CIDP. Under such circumstances, CIDP best explains Petitioner's injury, even if the treating physicians initially believed the presenting symptoms to be GBS. *See Blackburn v. Sec'y of Health & Human Servs.*, No. 10-410V, 2015 WL 425935 (Fed. Cl. Spec. Mstr. Jan 9, 2015). And petitioner's treaters ultimately concluded that CIDP was the proper diagnosis. *See* Ex. 13 at 13; Ex. 25 at 22; Ex. 27 at 24, 55, 77.

Accordingly, Petitioner cannot proceed in this action with her Table GBS claim, which is dismissed. Petitioner has, however, a potential causation-in-fact claim, as the record does raise the possibility that Petitioner could prevail on a non-Table claim if she can meet the requirements of *Althen v. Sec'y of Health & Human Servs.*, 418 F.3d 1274, 1278 (Fed. Cir. 2005).

**Conclusion**

Petitioner's Table GBS claim is **dismissed** for the reasons set forth above, and the case will be reassigned to a Special Master outside of the SPU.

**IT IS SO ORDERED.**

s/Brian H. Corcoran
Brian H. Corcoran
Chief Special Master